We want to thank our host, the University of Texas A&M Law School, for inviting the Fifth Circuit to sit here this week. We are thrilled to meet, I hope, a lot of you over the time, the three days that we're here. Everybody's been so accommodating and so nice and we're honored to be here. The first case on our docket this morning is 24-50213, United States of America v. Ortiz-Rodriguez. Mr. O'Neill. Mr. O'Neill May it please the Court, I'd like to briefly discuss the immigration proceedings that led to Mr. Ortiz-Rodriguez being deported before reviewing the individual factors under 1326 D. 1-3, which sets out the standards by which he can challenge that deportation in a subsequent illegal reentry prosecution. Mr. Ortiz was convicted of evading arrest in Texas in February of 2017. Later that year, in October, an immigration official visited him in the prison where he was incarcerated and served him with a final administrative order of removal. That administrative order of removal charged that he was not a U.S. citizen, that he was not a lawful permanent resident, and that he had been convicted of evading arrest and detention in Texas. And the specific charge was that he was deportable through an expedited removal procedure under the, because, under AUSC 1101A43F, which defines statutes that are a crime of violence. At that time, this Court's decision in United States v. Gonzales-Longoria applied where this Court had determined that Texas evading arrest was an aggravated felony. But in 2015, in Johnson v. United States, the Supreme Court had held that a similar definition of aggravated felony was unconstitutionally vague, and in 2016, the Supreme Court granted a cert petition in that case. And then in April of 2018, not a few months after the issuance of the final administrative order, the Supreme Court concluded in Sessions v. DiMaia that the crime of violence definition incorporated into 1101A43F was unconstitutionally vague, making Texas evading arrest not a crime of violence. What do we do with the circuit precedent that says a waiver is not rendered unknowing or involuntary merely because the underlying defense was subsequently held not to qualify as an aggravated felony? That's not the sole reason that I'm relying on to show that the underlying waiver was not unknowing or involuntary. But I thank you for the cue, and I'll try to get to that as quickly as possible. But starting on, if you permit me, starting with D-1, Mr. Ortiz exhausted administrative review, exhausted any avenues available for administrative review because there were not any avenues available. In an expedited removal, there's not a statutory ability to appeal to the Bureau of Immigration Affairs, or the Board of Immigration Affairs, sorry, as this court held in Valdiviez v. Hernandez. So that brings us, Judge Douglas, to your question, D-2, whether he exhausted his avenues for judicial review. He did not exhaust his avenues for judicial review because his waiver of the right to judicial review was not knowing and intelligent. Not only because the underlying offense is not an aggravated felony, but because the immigration agent, by using Form I-851, advised Mr. Ortiz of the avenues by which he could seek review, specifically omitting the avenue where he could challenge whether the underlying felony was an aggravated, whether the underlying conviction was an aggravated felony. So it says not only you have the right to appeal, or you can waive your right to appeal, but under the right to appeal, it says you can appeal your deportability determination because you are a citizen, you are a lawful permanent resident, or you have not been convicted of the offense described in the allegation in the notice of intent to issue a final administrative order of removal. By omitting the, really the grounds that mattered, the ability to challenge the underlying, the conviction's categorization as an aggravated felony, the immigration agent affirmatively misled Mr. Ortiz into waiving his right to challenge, to seek, to appeal to this court the determination of whether the aggravated felony is, the underlying conviction was an aggravated felony. So I believe the other side's argument, part of it is that the fourth checkbox is a catch-all provision, is that correct? The fourth box says I am attaching documents in support of my rebuttal and request for further review. And you don't see that as a catch-all? I don't see it as, I don't see it as, I see it as the immigration agent is telling you there's three ways that you can challenge it, and if you're attaching documents, you can check that as well. But when it says you have these ways of challenging, it doesn't say any other means, for example, of appeal, or any other, or it doesn't, to make the other government's argument work, it would need to have like a checkbox and a blank saying any other ground that you might raise for appeal, implying that there are others. As the form currently is constituted, it implies that there are three grounds for appeal, and that you might include documents to support that. And so you don't see a conflict with the section below that, where he checks off that, he admits that the allegations and charges in the notice of, he admits the allegations and charges in the notice of intent? No, I don't see a conflict between those two provisions. Basically, the waiver below is saying, I'm not going to appeal. But when you tell somebody above, these are the grounds upon which you can appeal, you're misleading them into thinking, well, I'm not a citizen, I'm not a lawful permanent resident, and I'm in jail for Texas evading arrest, so obviously I was convicted. Okay, I'll waive it and admit. I think the form is additionally problematic in that, on the notice, it lists the six charges. And you review those six charges and say, well, you know, those are all true. So it seems like you're being, again, misled into waiving your right to challenge the designation as an aggravated felony. But that brings us to the D3 prong, the entry of the order was fundamentally unfair. Here, the entry of the order was fundamentally unfair for two reasons. First, it violated Mr. Ortiz's due process rights because he had a statutory right to appear before an immigration judge and not be deported only after a meeting with an immigration agent. Because Mr. Ortiz was not given the procedure that's guaranteed him by 8 U.S.C. 1229A, and instead erroneously, subject to the expedited removal proceeding, he did not get the right that he's due by statute. But also, because of the misleading nature of the form, the entry of the waiver was also a due process violation in that he was affirmatively misled into waiving the rights that he had to challenge his deportation. But then moving on to prejudice, this is where we get to really the important distinction between an audience in front of an immigration judge, which is what this court's precedent speaks to, and an administrative order of removal. Because an immigration agent does not have the power to enter an order of deportation on grounds other than that you're an aggravated felon. So when we look to cases like Cordova-Soto, which is what the government primarily relies on, that case dealt with an immigration judge. And so when the immigration judge made the mistake and said, you are convicted of an aggravated felony, the alien in that case was also unlawfully present. So there was another grounds for deportability. And that was why, in Cordova-Soto, the error did not prejudice the defendant. Because that immigration judge could have entered an order deporting that alien. But here, there was no authority for an immigration agent to enter an order deporting Mr. Ortiz. So when 1326 D-3 asked us whether the entry of the order was fundamentally unfair, here Mr. Ortiz was prejudiced in a way that people who appear before immigration judges aren't. The person who entered the order, the final administrative order of removal, which is in the record in a couple of places, but record 94, that's what D-3 asked us about, whether the entry of that order was fundamentally unfair. The immigration agent who entered that order was not authorized to deport Mr. Ortiz or to enter an order deporting Mr. Ortiz on any grounds other than the fact that he was an aggravated felon. And since I have some additional time, I'll also discuss that distinction between an audience before an immigration agent and an immigration official is important as well for the inquiry under D-2. The denial of judicial review. So Judge Douglas, you asked me about our precedent discussing how the mistaken application of the aggravated felony designation isn't enough by itself. You're calling it a mistake, but it was not a mistake at the time. I agree, it wasn't a mistake at the time, and that's one of the government's arguments as well. But the problem with that argument, and the reason why the Tenth Circuit has the better review, is that it wasn't considered by this court to be a mistake at the time. It has always been a mistake, right? The law applies retroactively, and when the Supreme Court says that Texas evading arrest is not an aggravated felony, that's not a saying based on an amendment to the statute or a change in what that definition of aggravated felony is. It's a clarification of what the statute has always meant. So that's why the Fourth Circuit's concentration on the time of deportation is erroneous. But it's also a bad idea because if we look here, the time of deportation really can hardly be said to matter. Because you're right, it was at the time. But five months later, the Supreme Court comes out with Sessions v. DiMaia, which clarifies that it's not an aggravated felony. If Mr. Ortiz had appealed to this court the finding that he's an aggravated felon, his appeal would have certainly been ongoing when the Supreme Court decision came down. So that returns me to why this case is different than Cordova-Soto on the deprivation of judicial review prong. Because on the deprivation of judicial review in Cordova-Soto, there's no mention of an appeal waiver like this one that says these are the ways that you can challenge your designation as an aggravated felon. It would be better for the government if it just said do you want to appeal or do you not want to appeal? But when the government takes the step of saying do you want to appeal, here are the ways in which you might appeal, and omits the one where there's a cert petition pending that will resolve that issue in the favor of the defendant, that's when they deprive him of judicial review. Briefly, I'll talk about voluntary departure. Because Mr. Ortiz was subject to a erroneously determined to be an aggravated felon, he was held to be ineligible for a voluntary departure. That would have happened if he had gone before an immigration judge, an immigration judge would have, you know, if we game this out sort of in the prejudice analysis, right? Mr. Ortiz was found to be an aggravated felon. If he hadn't been misled about the fact that he could challenge that designation, that he appeals to this court, this court reverses under the recent decision in Sessions v. DiMaia, he goes back before an immigration judge, that terminates the hearing. He goes back before an immigration agent. Then the CFRs tell the immigration agent, you now terminate the expedited removal procedure, and you refer it to an immigration judge when appropriate. So I don't even think that we get to this step. Because the question is whether the entry of the final order of removal was unfair. And once we conclude that the designation of an aggravated felony is erroneous, then the expedited removal procedure, which leads to the entry of the final administrative order, that is done, that terminates. But if the court is inclined to look at whether there's a reasonable probability that he wouldn't have been deported, then that assumes that the immigration agent would determine it's appropriate to refer him to an immigration judge for Section 1229A proceedings. He's then before the immigration judge. The immigration judge would have considered him for a voluntary departure, and he would have had a strong argument for voluntary departure. He was brought here as a juvenile. He had no immigration history prior to his expedited removal. He had gone to school in the U.S. He had extensive family ties in the U.S. The government points to his finding of juvenile delinquency. Texas law tells us that that's not a criminal conviction. But also, immigration appeals, applying the voluntary departure determination, have said, we look at all of these factors, and that a criminal conviction by itself is not enough to conclude that someone who should not receive an immigration officer's exercise of discretion in granting him a voluntary departure. And certainly, he would have been eligible for it. You don't disagree, do you, that in our circuit, unlike other circuits, the burden of proving the waiver was invalid rests with you and your client, correct? Correct, under this court's recent decision in Hernandez-Velasquez. And because we, you know, I think the waiver by itself proves that. If we were relying on something else, about, you know, his lack of understanding of the waiver, or, you know, something to that effect, we would have to put on evidence that, you know, he didn't speak English, or, you know, some interaction between him and the immigration agent caused him to not understand it. In the 40 seconds you have left, you've used the phrase, affirmatively misled. Yes, sir. Your client was affirmatively misled. Can you take another stab at that and just distill it? Now 30 seconds, sorry. So, Judge, when I tell you, imagine you're my client, you're charged with a crime, you know, sorry. And, you know, we go through a proceeding and I tell you, you know, Judge, well, you have the right to appeal this. You could appeal the guilty finding and you could appeal the conditions of supervised release. And I say, do you want to appeal or not? You say, no, I don't want to appeal. Well, then I affirmatively misled you that you don't have the right to appeal your sentence because I've told you you have the right to appeal, I've told you you have certain grounds upon which you can do that, and I've omitted one, the one that matters.  May it please the Court, Lauren Tanner Bradley for the United States. In an illegal reentry case, a defendant may collaterally attack a prior removal order under only the narrowest of circumstances. Cortese cannot meet those circumstances here. First, he fails to show that his prior removal proceedings deprived him of an opportunity for judicial review. Second, he fails to show that this removal order was fundamentally unfair. And third, he fails to show actual prejudice because there is no reasonable likelihood that he would not have been deported. This Court can affirm the conviction below on any one of these three independent grounds. And I'll start with judicial review because this Court seems to have taken some interest in that. And here we have the defendant is conceding that he could have petitioned for judicial review in this case, but he didn't do so. He affirmatively waived it. And as this Court has already pointed out, it was his burden to show that this was an invalid waiver. He has presented no evidence whatsoever that the waiver was invalid. He was presented in the 851 with the charge that he was deportable because he had been convicted of an aggravated felony. That is the charge. Then in the Rights and Responsibilities section of that form, he was told that he had a right to counsel. He was given a list of free legal service providers that he could contact to seek that kind of aid. Then he was told that he must respond to this charge. And in his response, he could ask for an extension of time, he could rebut the charge, he could review the evidence, or he could admit deportability. Very importantly, in a separate paragraph in that form, it says that he has the right to petition for review with this Court. Then on the other side of this form, he's given an option. I wish to contest the charge, or I do not wish to contest the charge. And he selected the box, I do not wish to contest. In doing so, he admitted to the charge. Again, the charge is that he has been convicted of an aggravated felony, a legal term. He says that he is deportable and that he has no eligibility for relief. Also, he waives his right to rebut the charge and contest those charges. Again, referencing the charge. He also states expressly, I have the right to apply for judicial review. I do not wish this opportunity. I waive this right. Nothing in that at all limited his right to petition this Court for review to the factual issues. And as this Court has already pointed out, even if he had gone through that first I wish to contest, those boxes provide a catch-all box at the very end. And that catch-all box states, I am attaching documents in support of my rebuttal and request for further review. It says nothing about the factual issues at stake. It simply is a catch-all, very broad provision if he would like to seek further review from this Court. I noticed that the forms, there's two different ink colors. There's blue and there's black. Mr. Ortiz signed his name in black. The boxes were checked in blue, which was, I guess, the color of ink used by the immigration officer, correct? Yes, that's my understanding. And as I understand it, neither side argues that the boxes were checked without Mr. Ortiz's knowledge. Is that correct? No, there's no allegation. Mr. Ortiz is not at all suggesting that someone checked these boxes without his knowledge. There's no suggestion of coercion on his part. And, you know, when you're looking at this form, I think the form, when you're looking at it, it's pretty clear that the immigration officer filled out the form in one fell swoop. And then simply had Mr. Ortiz sign this form. And, again, this goes— And Mr. Ortiz states that he signed the form to acknowledge the checking of the waiver boxes. Yes. Yes. But, again, I don't think that he's disputing anything, that he didn't agree to anything in this form. I think he's simply saying, you know, candidly, he's saying that the government affirmatively misled him, but his argument amounts to really that he misread this form and that this is a misinterpretation of the form on his part. And I don't think that meets his evidentiary burden here. It's his burden to show that this was invalid, and he has presented no evidence in support of that argument. And if we take this argument for what it's worth, you'd essentially be saying that any alien who signed this form and later had some kind of legal challenge to his removal order has met the first box of a challenge of showing that he was denied an opportunity for judicial review. Does anything on the form indicate that the factual grounds are the only basis for judicial review? Nothing on the form suggests that, not at all. And, you know, this court has already said that there's no requirement for the government to detail every single possible avenue of relief or to fully detail what possibilities you might be able to obtain judicial review on. What do we make, if anything, of the fact that the box in the certificate of service is uncharted? So, again, I think that, so this is, the district court found that this was a valid waiver. And so there's nothing in this form to suggest that that was a clearly erroneous finding. The way that you could read this form is essentially that the immigration officer filled it out. He did state that he explained this in English. It's not checked. I don't think there's much to read into that. I don't think that they're contesting that this was served on him, anything to that nature. And how do you respond to opposing counsel's argument that in the section on I wish to contest a request withholding a removal, the fourth checkbox is not a catchall. It's just a box that alerts the reader that supporting documentation is attached to the form. I just don't think that that's a reasonable interpretation of the form. And even if it were a reasonable interpretation of the form, I don't think they've met their evidentiary burden to show that this renders the waiver invalid. I think that this checkall box provides an opportunity for an individual to say that they're requesting further review and to attach documents in support of that rebuttal. So I'd also like to turn to fundamental fairness. And with respect to fundamental fairness, I think the critical point here is that fundamental fairness is about process. Aliens have a right to a fair proceeding, not necessarily an error-free proceeding. And to satisfy this prong, Ortiz needs to actually show that his due process rights were violated. This court has repeatedly stated that expedited removal proceedings comport with a minimum due process requirement. Those requirements were met here. He was offered an opportunity. He was given notice of his charge. He was given a hearing. And then he was given an opportunity to be heard at that hearing. He simply waived his rights to those proceedings. And, candidly, that's the end of this prong. Was he provided with that process? Yes, he was. He has not demonstrated that the process was not available to him. And like this court has already noted, after the fact changes in immigration law, after the fact changes in the interpretation of immigration laws do not render those waivers suddenly invalid and deprive this individual of fundamental fairness. And then I'd like to also turn to... Did you have a prejudice point you were going to make? Yes, I was just going to turn to prejudice, Your Honor. And so with respect to prejudice, this court has made it very clear that to show actual prejudice, a defendant needs to show a reasonable likelihood that he would not have been deported. And it's a substantial showing that he must make. Again, his burden to show this. So how would a defendant in Ortiz's position with a similar criminal record, how would they show actual prejudice? How would they show actual prejudice? Someone with his criminal record, this serious recidivist history, these are serious offenses, very recent criminal history. I haven't seen a case in which an individual like Ortiz has been able to show actual prejudice. And, in fact, almost all of the cases within the circuit and outside of it, outside of the Ninth Circuit, find that this is a very substantial showing that individuals cannot meet based on the subsequent change in the law. And here you have a defendant who, first of all, at the time of these proceedings, he was eligible for removal because he had committed what was considered an aggravated felony at that time. And then on top of that, he is an individual who has no real legal ties to the United States. He has family here, but he has not presented any evidence that those individuals have any kind of legal status. They are not citizens. They are not permanent residents, which is what typically would be considered a positive equity. He also has, you know, this is an individual who was adjudicated delinquent for forcibly raping a 12-year-old. I don't think that that works in his favor. He also was currently serving a prison sentence for evading arrest, a very serious and dangerous offense. And, you know, I just don't see how – it's probably the easiest prong to affirm on, honestly, because I don't see how an individual with his circumstances could possibly show that he would not have been deported but for this. And I will just talk about the proceedings and how that would have occurred. The regulations actually say that this shall be converted, where appropriate, to removal proceedings. So even under these circumstances in the regulations, I don't think there's any doubt that he would have still been deportable based on his criminal offenses and that it would have then led to deportation. Even without the aggravated felony? Yes, because of his criminal history. What section of the law says that he would have been deported because of these other – the other incriminations? It's his criminal history that renders him deportable because of his present – because he's not presently – because he's presently violating the law. And so I believe that's under Section 1227A2. And I think it's – and I might have to – I'm happy to – What law was he presently violating? Well, so he was currently in prison for having been evading arrest, and that would be a conviction that would render him deportable. It's just – the only difference is that it would not be an aggravated felony that would then subject him to expedited removal proceedings. He would then just be under ordinary removal proceedings, and he would have the opportunity to be before an immigration judge. So he's saying had he gone to the immigration judge, he would have gotten the right to appeal. And five months later, we'd be looking at the – You know, I think that's highly speculative. I think that at the time the law was what it was, and he had the opportunity to appeal that – to appeal that decision at the outset of these expedited removal proceedings. And based on what we heard here today, he had all of the tools at his disposal to make those arguments. If in 2015 the argument – you know, there was Supreme Court precedent to support the argument, then he should have pursued his rights for a petition for judicial review. We want to incentivize defendants to zealously advocate for themselves and to pursue their rights diligently, and this is an individual who simply did not do so. He waived his right, and everything on this record suggests that he did it knowingly and voluntarily and did not wish to further appeal his deportability. If there are no further questions, I'll ask the Court to affirm. Thank you. The government says I am attaching documents in support of my rebuttal and request for further review as a catch-all. It would not even catch this ground. There are no documents to attach when you challenge the aggravated felony determination. The first page of the waiver, the Notice of Intent to Issue a Final Administrative Order, has all of the relevant information. Whether the crime of Texas evading arrest is an aggravated felony or not has absolutely nothing to do with documents. If the – in order for the government's – What about his waiver? He was told he had the right to cancel and was given a list of free counsel, and he waived his right to cancel. And had he gone to seek counsel, they might have been able to tell him, well, this issue's at the Supreme Court, and we should flag this and make it up. I agree that he waived that. I agree that he signed under where the immigration officer checked a waiver. Now, I would highlight that the government took about two and a half minutes going through all of the information contained on the first page of the form on Record 82. And the Certificate of Service says that Mr. Ortiz was presented by this form at 845 on 10-13-17 and signed it at 845 on 10-13-17. So it's really difficult to believe that an immigration agent explained anything on this first page to Mr. Ortiz in the span of a minute when it took the government more than two to go over what it includes to this court. So the inference, reasonable inference, is that they only presented him really with this page. But that's really all my argument relies on is this page, that it says you can challenge this for these reasons, and a lawyer could advise you about those reasons. But it omits the reason that matters. And it would be fine if the government had an appeal waiver on there that said, I've been given the notice of intent to final administrative order removal. I understand I have the right to appeal that. I waive that right. But it's when they take the step to say you can appeal it for these reasons, including a reason for which you would attach documents, and then they do not give the person the reason that would matter. When they omit that, the deportation proceedings are depriving him of judicial review. And then when we get to the question of whether he would have received some relief under an immigration judge, I think the text of 1326d3 stops that question before we even get to the immigration judge, because the question is whether the entry of the order was fundamentally unfair. Here the order is a final administrative order of removal. If we think about this in the context of an immigration judge proceeding, errors about the determination that an underlying conviction is an aggravated felony do not matter in an immigration proceeding if the person is otherwise deportable, like the government urges that Mr. Ortiz was, because an immigration judge is authorized to deport someone if they are otherwise deportable, aside from the aggravated felony determination. But an immigration agent is not so authorized. Immigration agents can only deport someone under 1228 if they're an aggravated felon and other under sections for other reasons that don't apply here. So here the fact that an immigration judge entered the order shows that the entry of the order was fundamentally unfair because it prejudiced Mr. Ortiz. He would not have been deported if he had been correctly determined, either by the immigration agent at the time or this court intervening on appeal, had he not been misled into waiving that right. When would he have been taken before an immigration judge? So these proceedings would have been—I don't know is the answer to the question, and that's why he prevails, right? Because the conclusion of the expedited removal proceeding, if it's determined that the crime is not an aggravated felony, is that it terminates and it gets referred to an immigration judge under the CFRs if the immigration agent deems it appropriate. Now it doesn't define what appropriate means. It doesn't define when that happens. Presumably it varies by immigration agent or by administration. But the question here is whether the entry of the order leading to his deportation was prejudiced to him. And it's beyond clear that if he had challenged the entry of the order, if he had challenged the designation as an aggravated felony, either the immigration agent himself or this court telling the immigration agent would have determined it's not an aggravated felony, he can't be expedited. I'm just trying to see how this plays out. I mean sometimes they're taken immediately before an immigration judge, like within 24 hours or hours or minutes. And he didn't know to raise the issue that was decided by the Supreme Court five months later. The immigration judge probably wasn't going to raise it for him. I'm just saying, is there anything in the record to show it would have been months before he got to see an immigration judge? There's nothing in the record that clarifies that. Judge Richmond, thank you. If you don't mind, I'll answer your question. But my argument is that it likely would have required him appealing, right? It likely would have required him not to be deprived of judicial review. And then the case would have gone up to this court. It would have pended probably longer than it took to decide. I'm just trying to get, how does he get, what extends it out five months to get him that he didn't see an IJA? His filing of the appeal. So when he gets served this notice of intent to issue final administrative removal, if he's advised you can challenge that it's an aggravated felony, then he says, okay, I want to challenge that. Presumably the immigration agent says, you know, no, we believe it's an aggravated felony as we charged. And he gets issued the final order of administrative removal and then appeals that, because he hasn't waived his right to do so, to this court. And then his appeal pens here until this court reverses the determination of the immigration agent, based on the Supreme Court's holding in DiMaia, and then it comes back. So I don't think it's what you're envisioning, where the immigration agent would just say, oh, you've told me it's not an aggravated felony. Here, go see the immigration judge. We don't know if that would have happened. Again, it would be a termination of proceedings and a referral if deemed appropriate. We don't know whether it would have happened or how long it would have taken. All right. Counsel, you are court-appointed, and we appreciate your service. You've done an excellent job. Thank you. Your client. Thank you.